## (October 27, 1937.)

ALVIN HAGER, Respondent, v. JESSE F. PADDLEFORD and FRANK COYLE, Also Known as FRANCIS COYLE, Appellants.

M. MORAN TRANSPORTATION LINES, INC., Respondent, v. JESSE L. PADDLEFORD and FRANK COYLE, Also Known as FRANCIS COYLE, Appellants.

Judgments and orders affirmed, with costs in one action.

Rhodes, McNamee, Crapser and Heffernan, JJ., concur; Hill, P. J., dissents, with an opinion.

Hill, P. J. (dissenting). The plaintiff Hager has a verdict for $15,000, the corporate plaintiff for nearly $1,200. Hager driving the corporation's truck southerly collided with the rear end of defendant Paddleford's truck standing on its and his right side of the paved highway. The truck was standing about 150 feet south of the apex of a small hill. The accident happened September 14, 1935, at about four-forty-five A. M. He saw the truck when about fifty to seventy feet away. Appellants urge a reversal on various grounds. Two of the assignments impress me. The defendant Coyle was the driver of the defendant Paddleford's truck. At many places through the record it was brought out by plaintiff's counsel that he had left the scene of the accident and was not present during the time plaintiff was being extricated from the wreck. It is a fact that he left the scene and went several miles to Sherburne and sent a doctor and a State trooper. A fine sense of solicitude on his part might have suggested that he return and render aid to the injured man, but this failure is not chargeable to the defendant Paddleford. Coyle's conduct after the event could not be made the basis of a recovery, and should not have been exploited at the trial to increase the verdict against the appellant. During the summation on plaintiff's behalf, Coyle's absence was commented upon with fervor and heat. I quote some of the remarks of counsel. " Coyle and Beck (the latter had hired the truck with driver for the day) did not care enough about it to inquire as to who he was, whether he was dead or living, or how badly he was injured. Bill Beck went to bed and to sleep * * *. I don't know, as I think about Beck and Coyle here, I guess I get so mad, I better stop talking about them, but they try to excuse Coyle's absence here " (at the trial). Counsel further asserted that Coyle was intoxicated and commented on his failure to attend through the trial. (He attended a few days and then left.) It appears that he had been confined in the Binghamton State Hospital for the insane for a time following the accident. Without proof it was suggested by plaintiff's counsel that he had been confined in that institution as an habitual drunkard. There was no proof indicating intoxication on the part of Coyle at the time of the accident. On this subject counsel said in part, " I know what he was committed for, I know why he wasn't here Friday, Saturday and today. I think you men know what he was doing too. He has been doing the same thing the last three or four days as he was doing on the morning of September 14." Thereby it was suggested to the jury that Coyle had been committed to the Binghamton State Hospital for habitual drunkenness, that he was intoxicated on the morning of the accident and had absented himself from court during three days of the trial because of drunkenness. These statements were unsustained by the evidence and prejudicial.

At the opening of the trial, counsel for the defendant Paddleford requested that counsel for plaintiffs refrain from asking the jury the usual question (Civ. Prac. Act, § 452), about being " a shareholder, stockholder, director, officer or employee,

in any manner interested in an insurance company issuing policies for protection against liability for damages for injury to persons or property." The reason stated for the request was that the " insurance company at this particular place disclaims any liability from the fact it claims that the defendant Paddleford was only insured as a State road contractor and does not cover anything outside of that." The truck had drawn a load of hay and was returning home. The trip had no relation to road contracting, and counsel objected to the insurance questions. The objection was overruled, and in two instances counsel went further than permitted by the decision. One juror answered him, " No, but I carry insurance." This was followed by the suggestion, " But you are not directly interested. A. No." Another juror answered " No." This was followed by the assertion, " In other words it is not for you to worry about payment. A. No." The first observation carried the implication that the juror was " indirectly " if not directly interested because of the fact that he carried insurance. The other indicated, it if had any meaning, that an insurance company would pay the damages. Justice is supposed to be served by permitting counsel to inquire in the language of section 452 of the Civil Practice Act. The practice is vicious enough at best and should be limited strictly. It should not be intimated to jurors that they have or have not a personal interest dependent on the raising or lessening of insurance rates to be paid by them. The defendants called a witness, Finch, whose business was " photography and general store." At the time of the accident, uninvited, he went to the scene and took pictures. These were introduced in evidence on behalf of the defendant. I quote a part of the cross-examination by plaintiffs' counsel: " I took it mainly as a sales proposition to sell a few pictures. Q. Who were you going to sell these pictures to? A. You never know. Q. What do you do, advertise them? A. No, they come in handy in case of an accident. Some one hears I took a picture and some insurance company or somebody wants it. Q. Did you think you were going to sell these to some insurance company? A. I didn't know. Q. Is that why you took them? A. That was the main idea." In the summation, counsel referred to this transaction as follows: " This part-time photographer who testified he went out when he heard the accident and took pictures to sell them to an insurance company. They talk about lawyers going out to get cases. I never heard of a photographer before in all my life that was willing to admit he went out and took photographs so that he could later sell them to the side that had money. That is what he did here."

A close question of fact was presented for the decision of the jury. Very substantial verdicts have been returned. I believe that the errors which I have pointed out were prejudicial and require a reversal on the law and facts, and a new trial. (*Cosselmon* v. *Dunfee*, 172 N. Y. 507; *Simpson* v. *Foundation Co.*, 201 id. 479; *Rodzborski* v. *American Sugar Refining Co.*, 210 id. 262; *Robinson* v. *McCoach*, 230 App. Div. 792.)